UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| THEODORE LANE TOMLINSON, JR., ) ) ) Plaintiff, ) ) vs. ) ) CAROLYN W. COLVIN, as acting Commissioner, United States Social Security Administration, ) ) ) ) Defendant. | Civil Action Number 5:16-cv-209-AKK |

## MEMORANDUM OPINION

Theodore Lane Tomlinson, Jr. brings this action pursuant to 42 U.S.C. 405(g) of the Social Security Act ("the Act"), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I. PROCEDURAL HISTORY

Tomlinson filed his application for Title II Disability Insurance Benefits alleging a disability onset date of September 4, 2012. (R. 125–126). Tomlinson

1

alleged an inability to work due to chronic obstructive pulmonary disease (COPD), hypertension, diverticular disease, and gastro-esophageal reflux disease (GERD). (R. 149–150). After the SSA denied his application, Tomlinson requested a hearing before an ALJ. (R. 75–84). The ALJ subsequently denied Tomlinson's claim, (R. 11–13), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1–3). Tomlinson then filed this action pursuant to § 405(g). Doc. 1.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.   STATUTORY AND REGULATORY FRAMEOWRK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or equals one listed by the Secretary;
(4) whether the claimant is unable to perform his or her past work; and
(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

**IV. THE ALJ'S DECISION**

In performing the five step analysis, the ALJ found that Tomlinson had not engaged in substantial gainful activity since September 28, 2012, and therefore met Step One. (R. 16). Next, the ALJ found that Tomlinson satisfied Step Two because he suffered from the severe impairments of diverticulitis, regional enteritis, COPD, obesity, and a history of GERD. (R. 16). In this step, the ALJ recognized that Tomlinson also had diagnoses of "osteoarthritis, hyperlipidemia, insomnia, [and]

4

right knee pain," but found that these diagnoses were controllable with medication. (R. 16). The ALJ then proceeded to the next step and found that Tomlinson did not satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 19). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that Tomlinson has the residual functional capacity (RFC) to "perform light work" and can "occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. . . . [can] sit and stand six hours in an eight-hour workday with all customary breaks," but that Tomlinson should "work occupations that require him to work indoors only." (R. 19). Lastly, in Step Five, the ALJ considered Tomlinson's age, education, work, experience, and RFC, and determined that "[Tomlinson] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 24). Therefore, the ALJ found that Tomlinson "has not been under a disability as defined in the Social Security Act, from September 28, 2012. . . ." (*Id.*).

## V. ANALYSIS

Tomlinson raises multiple contentions of error. For the reasons below, the court rejects each contention and affirms the ALJ's decision.

> *1. The ALJ's denial of disability was supported by substantial evidence and the ALJ did not commit error in relying on Dr. Callins' assessment*

Tomlinson's first contention of error is based on the ALJ's reliance on Dr. Delsadie Callins' assessment of Tomlinson's disability. Specifically, Tomlinson contends that Dr. Callins was not a qualified medical source within the meaning of 20 C.F.R. § 404.1519g(b), that she lacked the proper qualifications to render an expert opinion, and that the ALJ erred by relying on Dr. Callins' testimony. Doc. 11 at 11–12. The court disagrees.

**a. Dr. Callins is a qualified medical source**

According to Tomlinson, Dr. Callins is not a qualified medical source because her specialty is pediatrics and "there is no evidence that [Dr. Callins] meets the test of having the training and experience necessary to . . . form an opinion as to an adult [with Tomlinson's impairments]." Doc. 11 at 16. The court disagrees because the regulations do not prohibit the SSA from relying on general practitioners or mandate that the SSA only use physicians specifically trained in the specialty applicable to a claimant. Rather, the regulation defines a qualified medical source simply as someone "currently licensed in the State [with] the training and experience to perform the type of examination or test [the SSA] will request[,]" 20 C.F.R. § 404.1519g(b), and an acceptable medical source includes "licensed physicians (medical or osteopathic doctors)," 20 C.F.R. § 404.1513(a)(1). Excluded from this group are individuals "whose license to

6

provide health care services is currently revoked or suspended by any State licensing authority . . . or who . . . ha[ve] surrendered such a license while formal disciplinary proceedings involving professional conduct are pending." 20 C.F.R. § 404.1503a.

Tomlinson has offered no evidence that Dr. Callins was not a licensed physician at the time she reviewed Tomlinson's medical records. In fact, the license details Tomlinson provides shows that Dr. Callins has a "full unrestricted" license to practice medicine.[1] (R. 202). Instead, Tomlinson argues that Dr. Callins is not a qualified source because she "has failed to maintain the continuing medical education in her designated specialty." Doc. 13 at 2. However, the Consent Order and reprimand that Tomlinson relies on for this argument was issued fifteen months before Dr. Callins offered the review of Tomlinson's impairments that is at issue here. (*Compare* R. 205 *with* R. 72). There are several problems with Tomlinson's reliance on the Consent Order. First, the Consent Order did not revoke or suspend Dr. Callins' license, and no basis exists from it to find that she is

---

[1] Tomlinson also contends that because the ALJ cited 20 C.F.R. § 416.927(f), a Supplemental Social Security Income regulation, instead of 20 C.F.R. § 404.1527(e)(2)(i), the ALJ relied on the incorrect legal standard. Doc. 11 at 17. This contention is unpersuasive and also misstates the standard applied in 20 C.F.R. § 404.1527(e)(2)(ii), which explains that, in considering the weight to give a consultant's opinion, the ALJ evaluates "the consultant's medical specialty and expertise in [the] rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides and other factors relevant to the weighing of the opinions." This is essentially the standard set out in 20 C.F.R. §416.927(e), which also evaluates the treating relationship, the evidence the source provides in support of that opinion, and the source's area of expertise. Accordingly, the court finds that the ALJ's citation error, if any, is harmless.

not a licensed physician. Second, the Consent Order required that Dr. Callins complete the outstanding medical education requirements by December 31, 2011, (R. 205, 72), and nothing in the record suggests that Dr. Callins had not done so by the time she reviewed Tomlinson's records and issued her report in January 2013. In short, Tomlinson's argument that Dr. Callins was not a qualified physician is unpersuasive. As such, the ALJ did not err in considering Dr. Callins' opinion.[2]

### b. The ALJ's determination was supported by substantial evidence

In light of his contention that the ALJ improperly relied on Dr. Callins' opinion, Tomlinson contends that the ALJ "failed to properly apply the correct legal standards[,] . . . made other errors of law[,] and his decision . . . [is] not supported by substantial evidence." Doc. 1 at 2. As stated previously, the ALJ properly relied on Dr. Callins. Moreover, the ALJ's opinion is supported by substantial evidence. Specifically, in reaching his decision, the ALJ considered Tomlinson's medical condition as a whole, and determined that Tomlinson had the RFC to perform light work. (R. 19). In making this determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably

---

[2] Tomlinson also argues that 20 C.F.R. § 404.1527(e)(2)(i) violates procedural due process because it creates a presumption that the medical source is qualified. *See generally* docs. 1 and 11. Tomlinson had with the opportunity to challenge Dr. Callins' findings and qualifications at the hearing with the ALJ, but failed to do so, and has instead challenged them only with the Appeals Council and this court. *See* docs. 1; 11; (R. 197−211). Accordingly, Tomlinson has failed to demonstrate that the ALJ denied him due process and that he was unable to adequately dispute Dr. Callins' qualifications. *See Mathews v. Eldridge*, 424 U.S. 319, 349 (1976).

be accepted as consistent with the objective medical evidence and other evidence." (R. 20). A review of the ALJ's opinion shows that the ALJ initially discussed Tomlinson's history of breathing difficulties, GERD, heart issues, and stomach issues, including Tomlinson's contention that "he gets out of breath easily, which prevents him from working eight hours, has constant abdominal pain, and goes to the bathroom at least twelve times a day." (*Id.*). The ALJ also noted that the medical evidence contradicted Tomlinson's reports. As it relates to this finding, the ALJ cited first that although Tomlinson contended that he was disabled due to COPD, Tomlinson was non-compliant with medical advice, that the COPD improved with medication, that Tomlinson had denied shortness of breath at doctor's appointments, and that a pulmonary function test revealed improvement with treatment. (R. 21).

Next, as to Tomlinson's testimony that he used the bathroom twelve times a day, the ALJ stated that "there is no evidence of this in the record and without doubt such ongoing bathroom visits would have been brought to the attention of his doctors for treatment," (R. 21) (*see also* R. 515−546), and that "[Tomlinson] had numerous medical visits with no complaints of such frequent bathroom visits. [Including subsequent doctor's appointments at which Tomlinson] denied any abdominal pain, diarrhea, or dysuria." (R. 21). Finally, the ALJ considered the different sources of medical evidence. (R. 22). In analyzing the medical opinions,

9

the ALJ gave little weight to the opinion of Dr. Junaid H. Memon, M.D., one of Tomlinson's internists, who opined that Tomlinson could not work because of his oxygen dependency and the then open wound from the colostomy. (R. 371). According to the ALJ, Dr. Memon's opinion that Tomlinson could not work "is an opinion of an issue reserved for the Commissioner" and "was not consistent or supported by all of his own treatment notes, nor is it consistent with the remainder of the medical evidence of record . . ." (R. 22). However, the ALJ gave "great weight" to the opinion of the State Agency medical consultant, Dr. Callins, because of her report's consistency with the objective medical record. (R. 22–23). The ALJ's analysis of the opinions of the medical sources is consistent with the law, which states that the ALJ is "required to state with particularity the weight he gives to different medical opinions and the reasons why," *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006), and state "specifically the weight accorded each item of evidence and the reasons for his decision." *Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986).

Based on the court's review of the record, it is readily apparent that the ALJ considered Tomlinson's medical history and, in making his determination of Tomlinson's RFC, properly analyzed the medical evidence and pointed to various examples where Tomlinson's subjective testimony contradicted his medical records. (R. 21–23). Accordingly, the court concludes that the ALJ clearly

articulated his reasons for discrediting Tomlinson's subjective testimony, *see Wilson v. Barnhart*, 284 F.3d at 1226 (noting that the "ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so"), and relied on the relevant record evidence in determining Tomlinson's remaining ability to do work in spite of his impairments, *see Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); *see also Beech v. Apfel,* 100 F. Supp. 2d 1323, 1330 (S.D. Ala. 2000) (the "determination of residual functional capacity is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments.").

> *2. The ALJ did not err in determining that there were still jobs that Tomlinson could perform*

Tomlinson next argues that the ALJ posed an incomplete hypothetical to the vocational expert and, as such, failed to rely on substantial evidence in his assessment of Tomlinson's RFC. Doc. 11 at 22. Specifically, Tomlinson contends that the ALJ did not properly consider his need for near constant oxygen in the hypothetical. The court disagrees.

In order for the testimony of a vocational expert to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002). However, "the hypothetical need only include 'the claimant's impairments,'"

11

not each and every symptom of the claimant." *Ingram*, 496 F.3d at 1270; *see also*, *McSwain v. Bowen,* 814 F.2d 617, 620 n. 1 (11th Cir. 1987) (ALJ did not err in failing to include limitations that did not affect the work claimant could do); *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986) (ALJ did not err in failing to include in hypothetical question limitations that did not significantly affect the level of work the claimant can do). As shown below, the ALJ, in fact, posed a hypothetical that included Tomlinson's impairments.

At the outset, the court notes that the vocational expert sat through the entire hearing and heard all the testimony, including Tomlinson's testimony about his back pain, difficulty breathing, and stomach complaints. (*See, e.g.,* R. 40–43). At some point after Tomlinson's testimony, the ALJ posed two hypotheticals to the vocational expert that included Tomlinson's age, education, and past relevant work. In the first, the ALJ stated that Tomlinson could:

> Occasionally lift and, or carry, include—up including a 20 pound[s . . . for] up to one third of an eight-hour work day. [Tomlinson] can frequently lift and or carry; up including of 10 pounds. . . . [for] up to two thirds of an eight-hour work day. [He can] occasionally climb ramps; and stairs; occasionally balance; stoop; kneel and crouch; no work on ladders. . . [the individual] is to avoid concentrated exposure to extreme cold; extreme heat; wetness; and humidity; avoid concentrated exposures to fumes; odors; dust; gasses; and poor ventilation; avoid all exposures to dangerous machinery; and unprotected heights; and the job should be considered a[] job performed indoors.

(R. 56). In the second, the ALJ asked the vocational expert to assume the same limitations as above, but that:

12

> The [] individual can sit six hours in an eight-hour work day. However, standing and walking is limited to six hours in an eight-hour work day. But no greater than 30 minutes at one time.

(R. 57). Contrary to Tomlinson's contentions, these hypotheticals contained Tomlinson's restrictions relating to his COPD and obesity and were designed to elicit testimony as to whether jobs existed that Tomlinson could perform.

In response to the hypotheticals, the vocational expert found that the limitations in both eliminated all of Tomlinson's past relevant work. (R. 56). However, the vocational expert testified that even with the limitations contained in the second hypothetical, there were still jobs available in the region that Tomlinson could perform, such as photo copy operator and mail sorter. (R. 56). Critically, when Tomlinson's representative asked about restrictions related to Tomlinson's need to carry oxygen, (R. 58), the vocational expert explicitly found that "[the restriction] would continue to allow access to jobs cited for hypothetical number two. As a standalone it does not necessarily preclude work activities." (R. 58). More importantly, the ALJ noted this finding in his opinion, (R. 22), which belies Tomlinson's contention that the ALJ failed to properly account for Tomlinson's need for constant oxygen. Therefore, substantial evidence supports the ALJ's assessment that Tomlinson had the RFC to engage in light work.

### *3. The Appeals Council properly reviewed the new and material evidence provided after the hearing in front of the ALJ*

As it relates to the Appeals Council, Tomlinson phrases the issue as: "whether or not it was both an error of law and not supported by substantial evidence for . . . the Appeals Council . . . to rely upon and give weight to the opinion of the non-examining pediatrician . . . ." Doc. 11 at 10. Presumably, Tomlinson is contending that the Appeals Council erred in failing to disqualify Dr. Callins. This contention is unavailing because Tomlinson provided the Appeals Council no valid basis for it to reject Dr. Callins' findings.

The Appeals Council is required to consider "new and material evidence that is related to the period on or before the date of the administrative law judge hearing decision" and "must review the case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in record." *Gichuru v. Astrue*, No. 2:11-cv-04203-RDP, 2013 WL 1178723 (N.D. Ala., March 20, 2013). Where the plaintiff challenges both the ALJ's decision to deny benefits and the decision of the Appeals Council to deny review based on new evidence, "a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). Moreover, the Appeals Council is not permitted to engage in a "perfunctory review" of the ALJ's decision, but must adequately evaluate the new evidence in making its decision. *Epps v. Harris,* 624 F.2d 1267,

1273 (5th Cir. 1980). The Appeals Council is not, however, required "to provide a detailed discussion of a claimant's new evidence when denying a request for review." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783 (11th Cir. 2014).

As discussed in Section III.1.a, *supra*, the ALJ properly weighed Dr. Callins' qualifications prior to rendering his decision and the Appeals Council did not err in denying Tomlinson's appeal on those grounds. Tomlinson provided the Appeals Council with materials related to Dr. Callins' reprimand by the Medical Licensure Board.[3] (R. 197–199, 202–211). In its notice to Tomlinson, the Appeals Council stated that it accepted Tomlinson's new evidence into the record and that it denied review because the evidence did not trigger a remand under its rules. (R. 1, 2). While Tomlinson may disagree with the decision, there is no error here because the case law requires only that the Appeals Council state that it has considered the

---

[3] Tomlinson also provided additional medical treatment records from subsequent doctor's visits relating to arthritic pain. (*See* R. 197–211, 464–575).These records are composed of medical records from his colostomy reversal (R. 479–513), follow up visits with a physician for arthritic pain and general wellness, (R. 515–546), and visits to a clinic for an abscess on his thigh, (R. 547–575). Tomlinson has made no substantive argument regarding the denial of the Appeals Council review as it relates to the additional medical treatment records, nor does he argue that proper review would have warranted remand. See docs. 1; 11; 13. However, no basis exists in these records for a remand. For example, Tomlinson's physician noted that Tomlinson's pain was controlled with treatment, and that Tomlinson was not suffering from shortness of breath or diarrhea. (*See generally* R. 515–546). Nothing in the medical records indicates that this evidence was related to Tomlinson's breathing difficulties or his GERD, and Tomlinson has not argued that the evidence is noncumulative, material, or that "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen,* 823 F.2d 456, 459 (11th Cir. 1987). Accordingly, the Appeals Council did not err in determining that the ALJ's decision was supported by substantial evidence.

additional evidence. *Mitchell,* 771 F.3d at 783; *Mansfiled v. Astrue,* 395 F. App'x 528, 530 (11th Cir. 2010); *Smith v. Comm'r of Soc. Sec. Admin.,* 272 F. App'x 789, 801 (11th Cir. 2008). Accordingly, the court finds that the Appeals Council performed its own review, did not perfunctorily accept the ALJ's determination, and correctly decided that the ALJ's determination was not contrary to the weight of evidence currently on record. *Ingram,* 496 F.3d at 1253; *Mitchell,* 771 F.3d at 783.

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Tomlinson is not disabled and has the RFC to perform light work is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 15th day of December, 2016.

                                            _____
                                            **ABDUL K. KALLON**
                                            UNITED STATES DISTRICT JUDGE